

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 23, 2018**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 16-30503-BJH |
| BAILEY TOOL & § | (Chapter 7) |
| MANUFACTURING COMPANY, § | |
| § | Related to ECF No. 441 |
| DEBTOR. § | |
| § | |

### MEMORANDUM OPINION AND ORDER REGARDING MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

Before the Court is the Motion for Allowance of Administrative Claim [ECF No. 441][1] (the "**Motion**") filed by Comerica Bank ("**Comerica**"), requesting allowance of a $1,280,000[2] superiority administrative expense claim pursuant to 11 U.S.C. § 507(b) (the "**Diminution Claim**") against each of Bailey Tool & Manufacturing Company ("**Bailey Tool**"), Cafarelli Metals, Inc., ("**Cafarelli**"), and Hunt Hinges, Inc. ("**Hunt**" and, collectively, the "**Debtors**") for

---

[1] "ECF No." refers to the docket sheet in the case of *In re Bailey Tool & Manufacturing Co.*, 16-30503-BJH-7.

[2] The Motion contains conflicting amounts. The body of the Motion requests a superpriority claim of $1,609,348.45, while the prayer requests $1,280,000. At the Hearing, Comerica's counsel clarified that the correct amount is $1,280,000. Hr'g Audio Tr. (11/28/17) 9:04-05.

the alleged diminution in the value of its collateral during the pendency of the Debtors' bankruptcy cases.[3]  Hayward & Associates, LP ("**Hayward**")[4] filed the sole objection to the Motion, alleging that Comerica is not entitled to the Diminution Claim because the value of its collateral increased during the pendency of the bankruptcy cases.  The Court held an evidentiary hearing to consider the Motion on November 28, 2017 (the "**Hearing**"), and the matter is now ripe for ruling.[5]

For the reasons explained below, the Court will allow Comerica, on an interim basis, a $177,282 superpriority administrative expense claim pursuant to 11 U.S.C. § 507(b) against Bailey Tool, subject to final true-up after (1) the resolution of the of the Debtors' dispute with Republic Business Credit, LLC ("**Republic**"), discussed below, and (2) final collection or resolution of Bailey Tool's outstanding accounts receivable.

I. **JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over the Motion under 28 U.S.C. § 1334 and the standing order of reference of the District Court for the Northern District of Texas.  This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(A), (B), and (O), and venue is proper in this Court under 28 U.S.C. § 1408.

II. **FACTUAL AND PROCEDURAL HISTORY**

A. **The Debtors' Prepetition Loans and Factoring Agreement**

Prior to filing for bankruptcy, the Debtors were in the business of metal fabrication.  On September 14, 2012, Bailey Tool executed an installment note payable to Comerica in the principal

---

[3] Although the Motion also requests allowance of a superpriority administrative claim against debtor Bailey Shelter L.P., Comerica's counsel withdrew such request on the record at the Hearing. Hr'g Audio Tr. (11/28/17) 9:05. Accordingly, Bailey Shelter L.P.'s bankruptcy case is not relevant to this Memorandum Opinion and Order.

[4] Hayward served as the Debtors' counsel during their Chapter 11 cases and holds a pre-conversion claim for attorneys' fees.

[5] This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.  Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of fact, should be so considered.

amount of $391,100.00 (as amended, the "Installment Note"). Case No. 16-30503, Proof of Claim 17-1 Exs. D and E. On March 28, 2013, the Debtors executed a promissory note payable to Comerica in the principal amount of $2,175,000.00 (as amended, the "SBA Term Note"). *Id.* Exs. A-C. Both the Installment Note and the SBA Term Note are secured by substantially all of the Debtors' assets. *Id.* Exs. F, G, and I.

In 2014, the Debtors' loans with Comerica went into workout status. In an attempt to monetize their accounts receivables and generate operating funds, the Debtors each entered into an Agreement for Purchase and Sale with Republic (collectively, the "**Republic Factoring Agreements**"). To accommodate this arrangement, Comerica agreed that it would subordinate its lien on the accounts receivable that were subject to the Republic Factoring Agreements. The Debtors and Republic disagree on whether the Republic Factoring Agreements were terminated, and Republic's claim paid in full, as of the Petition Date. This disagreement, which includes allegations that Republic is withholding substantial funds that are property of the estate, is the subject of an adversary proceeding currently pending before the Court. *See Bailey Tool & Manufacturing Co. v. Republic Business Credit, LLC,* Adv. Proc. No 16-3025 (the "**Republic Adversary Proceeding**").

### B. The Debtors' Bankruptcy Cases

On February 1, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**").[6] Their Chapter 11 cases were jointly administered under the lead case of *In re Bailey Tool & Manufacturing Company*.

---

[6] The Debtors' respective bankruptcy cases are *In re Bailey Tool and Manufacturing*, 16-30503, *In re Hunt Hinges, Inc.*, 16-30504, and *In re Cafarelli Metals, Inc.*, 16-30507.

During the Chapter 11 cases, the Court entered the following orders authorizing the Debtors to use Comerica's cash collateral and Republic's alleged cash collateral (collectively, the "**Cash Collateral Orders**"):

- Interim Order Authorizing the Debtors to Use Cash Collateral through February 29, 2016 [ECF No. 30];

- Second Interim Order Authorizing the Debtors to Use Cash Collateral through March 30, 2016 [ECF No. 113];

- Final Order Authorizing the Debtors' Use of Cash Collateral [ECF No. 167] (the "**Final Cash Collateral Order**");

- First Supplement to Final Order Authorizing the Debtors' Use of Cash Collateral [ECF No. 267];

- Amended Supplement to Final Order Authorizing the Debtors' Use of Cash Collateral [ECF No. 298]; and

- Second Supplement to Final Order Authorizing the Debtors' Use of Cash Collateral [ECF No. 335].

Each of the Cash Collateral Orders contained the following language (or substantively similar language) granting Comerica and Republic adequate protection in the forms of replacement liens and superpriority claims:

> **Adequate Protection**: As partial adequate protection to Comerica and Republic, to the extent that the Debtors' use of the Cash Collateral results in a decrease in the value of Comerica's and/or Republic's interest in such property, such lender is hereby granted: (i) automatically perfected liens (the "Adequate Protection Liens") on all property now owned or hereafter acquired by the Debtors (the "Collateral"), subject only to paragraph below and the lien of Sterling Commercial Credit, LLC (the "DIP Lender") solely in the Debtors' accounts; and (ii) superpriority administrative claims (the "Superpriority Claims") pursuant to Sections 361(2), 363(c)(2), 364(d)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, junior only to the superpriority claim against the Debtors in favor of the DIP Lender. As between Republic and Comerica, the Adequate Protection Liens and the Superpriority Claims shall have the priority provided in the Subordination and Intercreditor Agreement dated February 25, 2015 between Republic, Comerica, the Debtors, John Buttles, and Buttolph Technology, LLC (the "Subordination Agreement"). Nothing in this order or any prior order shall be construed to grant liens that prime ad valorem property tax liens.

Final Cash Collateral Order ¶ 7.  Pursuant to the Cash Collateral Orders, the Debtors made monthly adequate protection payments to Comerica totaling $90,000.  Comerica Ex. 43 at 2.

The Court also authorized the Debtors to enter into a postpetition financing arrangement with Sterling Commercial Credit, LLC (the "**DIP Lender**") in the form of the Accounts Purchase and Security Agreement, pursuant to which the DIP Lender factored the Debtors' postpetition accounts receivable.  *See* Final Order Authorizing Debtors to Enter Into Financing Transaction with Sterling Commercial Credit, LLC and Providing Adequate Protection to Comerica Bank and Republic Business Credit, LLC [ECF No. 174] (the "**DIP Financing Order**").  Pursuant to the DIP Financing Order:

> To secure the Obligations, [the DIP] Lender is hereby granted pursuant to Section 364(d) of the Code a first lien on the Collateral.[7] No other claims, liens or security interests, including but not limited to any lien of Republic Business Credit, LLC or Comerica, shall be prior to Lender's lien in the Collateral in this or any subsequent proceeding under the Bankruptcy Code. Republic Business Credit, LLC and Comerica Bank have or claim to have liens on the Debtors' accounts, and Lender's lien in such accounts is a priming lien for the purposes of Section 364(d) of the Code.
>
> \*\*\*
>
> The Obligations [owing to the DIP Lender] shall have the highest administrative priority under Section 364(c)(1) of the Code, and shall have priority over all other costs and expenses of administration, including those specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the Code or otherwise (whether incurred in this case, any conversion of this case pursuant to Section 1112 of the Code, or in any other proceedings related hereto or thereto) (the "Superiority Claim").
>
> \*\*\*
>
> As partial adequate protection to Comerica and Republic, to the extent that the Debtors' use of the Pre-Petition Collateral and Cash Collateral results in a decrease in the value of Comerica's and/or Republic's interest in such property, such lender is hereby granted: (i) automatically perfected liens (the "Adequate Protection Liens") on all property now owned or hereafter acquired by the Debtors, subject to

---

[7] The DIP Financing Order defines "Collateral" as "all of the Debtors' now existing and hereafter arising accounts as defined in the Uniform Commercial Code."  *Id.* ¶ H.

> the prior lien of [DIP] Lender in the Collateral and (ii) Superpriority Claims junior in priority and subordinate to the Superpriority Claim in favor of DIP Lender. As between Republic and Comerica, the Adequate Protection Liens and the Superpriority Claims shall have the priority provided in the Subordination and Intercreditor Agreement dated February 25, 2015 between Republic, Comerica, the Debtors, John Buttles, and Buttolph Technology, LLC….

DIP Financing Order ¶¶ 2.1, 2.4, and 3.5.

On January 26, 2017, the Court entered an order dissolving joint administration and converting the Debtors' cases to Chapter 7. James Cunningham was thereafter appointed Chapter 7 Trustee over the Debtors' respective estates. At the Trustee's request, the Court entered an order setting July 17, 2017 as the deadline for filing administrative claims against each Debtor's Chapter 11 estate. Comerica timely filed the Motion in the Bailey Tool case, but it did not file the Motion in the Hunt or Cafarelli cases.

### III.   LEGAL ANALYSIS

#### A.   Preliminary Matters

Before turning to the parties' arguments, the Court must address two preliminary issues. First, despite the fact that Comerica is seeking the Diminution Claim against each Debtor, it only filed the Motion in Bailey Tool's Chapter 7 case. Although a single filing in Bailey Tool's case would be appropriate if the cases were still jointly administered, joint administration ceased when the cases converted to Chapter 7. Because of this, Comerica was required to file the Motion in each case. Comerica's failure to do so raises due process concerns that prevent this Court from allowing a superpriority administrative claim against either Hunt or Cafarelli. Accordingly, the Court will only analyze the Diminution Claim as alleged against Bailey Tool.

Second, the Court must determine the relevant dates by which it should measure the alleged diminution in the value of Comerica's collateral. Both parties agree that the Petition Date is the starting point, but they disagree on the end date. Comerica argues that the Court should judge final

value as of the dates that the Trustee liquidated its collateral during the bankruptcy case. Hayward, on the other hand, urges the Court to measure final value as of the Conversion Date, regardless of subsequent sales.

Hayward's proposed approach is notable because neither party hired an appraiser or valuation expert. Instead, each relies on documents filed with the Court, including Bailey Tool's Schedules of Assets and Liabilities [ECF No. 92] (the "**Schedules**"), Monthly Operating Reports (the "**MORs**"), and several post-conversion sale orders. If the Court were to end its analysis at the Conversion Date, the only evidence of value in the record would be Bailey Tool's Schedules and MORs. Bailey Tool's last MOR, however, covered the period of November 1 – 30, 2016 (nearly three months prior to the Conversion Date), and it failed to file post-conversion schedules as required by the Bankruptcy Code. Thus, under Hayward's proposal, the record would be devoid of evidence showing value as of the Conversion Date, and the Motion would fail for a lack of proof. The Court, however, declines to limit its analysis to the Conversion Date when the record contains the ultimate sales price for the subject collateral.

Based upon the record before it, the Court finds Comerica's argument persuasive. To hold otherwise would ignore the facts that (1) the Trustee has liquidated virtually all of Bailey Tool's remaining assets through arms-length sales to third parties, and (2) under the Final Cash Collateral Order, Comerica's adequate protection did not end on the Conversion Date, but continued into the Debtors' Chapter 7 cases. *See* Final Cash Collateral Order ¶ 20 ("… the Adequate Protection Liens and Superpriority Claims granted [to Comerica and Republic] herein shall continue in these proceedings and in any successor cases. The Adequate Protection Liens and Superpriority Claims shall maintain their priority as provided by this Order.").

Thus, the Court concludes that, under the facts of this case, the relevant dates at which to measure the value of Comerica's collateral are the Petition Date and the sale date. With these preliminary matters addressed, the Court will turn to the parties' arguments.

### B.    Analysis of the Diminution Claim Under 11 U.S.C. § 507(b)

Section 507(b) of the Bankruptcy Code governs whether the Diminution Claim is entitled to superpriority status. Under the statute, Comerica has the burden of proving that: (1) it was previously provided adequate protection under Bankruptcy Code §§ 362, 363, or 364, (2) notwithstanding such adequate protection, it holds a claim that is allowable under 11 U.S.C. § 507(a)(2), and (3) its § 507(a)(2) claim arose from (i) imposition of the automatic stay under § 362, (ii) Bailey Tool's use, sale, or lease of Comerica's collateral under § 363, or (iii) the granting of a senior lien under § 364(d). 11 U.S.C. § 507(b);[8] *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865-66 (4th Cir. 1994). Superpriority status, however, only arises if the diminution is not offset by the replacement liens Comerica was granted as adequate protection under the Cash Collateral Orders and the DIP Financing Order. Only the shortfall remaining is entitled to superpriority status. *See* 4-507 Colliers on Bankruptcy Prac. 507.14 (A. Resnick & H. Sommer eds., 16th ed. 2017).

Because it is undisputed that Bailey Tool provided Comerica adequate protection under §§ 362, 363, and/or 364 pursuant to the Cash Collateral Orders and the DIP Financing Order,

---

[8] 11 U.S.C. 507(b) states:
> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

Comerica has clearly met the first requirement. Thus, this Court will only analyze the second and third requirements of the statute.

### 1. Comerica Must Have a Claim Allowable Under § 507(a)(2)

If all other requirement of the statute are met, § 507(b) grants superpriority status to claims otherwise allowable as an administrative expense under § 507(a)(2). Section 507(a)(2), in turn, requires that the claim be allowed as an administrative expense under § 503(b). As applicable here, the administrative expenses allowable under § 503(b) are the "actual, necessary costs and expenses of preserving the estate…." 11 U.S.C. § 503(b)(1)(A). This requires actual use of the creditor's property by the debtor or trustee that confers a concrete benefit to the estate. *Dobbins*, 35 F.3d at 865-66 (quoting *In re ICS Cybernetics, Inc.*, 111 B.R. 32, 36 (Bankr.N.D.N.Y.1989)).

Here, the record clearly shows that Bailey Tool used Comerica's collateral and cash collateral to operate and fund ongoing operations while in Chapter 11. Post-conversion, the Trustee liquidated Comerica's collateral and used its cash collateral to fund the administration of the estate. In fact, no party has alleged that Comerica's collateral or cash collateral was used for anything other than the actual, necessary costs and expenses of preserving the estate. Accordingly, the second requirement of § 507(b)(2) is also met to the extent that Comerica is able to prove a qualifying diminution in the value of its collateral, to which the Court will now turn.

### 2. Whether there was a Diminution in the Value of Comerica's Collateral Caused by Either (1) Imposition of the Automatic Stay Under § 362, (2) Bailey Tool's Use, Sale or Lease of Comerica's Collateral under § 363, or (3) the Granting of a Senior Lien Under § 364(d)

In its Motion, Comerica alleges that the adequate protection it received was insufficient to protect it from a diminution in the value its collateral due to: (1) Bailey Tool's use of Comerica's cash collateral, (2) the priming lien on Bailey Tool's accounts receivable granted to the DIP Lender under the DIP Financing Order, and (3) the accrual of ad valorem taxes during the bankruptcy

case. Motion ¶¶ 1-3, 23-24. The Motion, however, gives no detail regarding the value of Comerica's collateral or its alleged diminution. Instead, Comerica simply calculates the Diminution Claim as the amount reflected in its proof of claim ($2,018,628.08) minus amounts received from sales of its collateral by each Debtor ($737,000), for a Diminution Claim of "more than $1,280,000." *Id.* ¶¶ 10-11.

Hayward, however, points to portions of Bailey Tool's Schedules and November 2016 MOR [ECF No. 368] (the "**November MOR**") to argue that the value of Comerica's collateral actually increased by over $300,000 since the Petition Date:

| Collateral | Schedule A [ECF No. 92] | November MOR [ECF No. 368] |
|---|---|---|
| Account Receivable | $448,926.33 | $862,295.00 |
| Cash | $11,172.00 | $7,003.00 |
| Bailey inventory | $619,243.00 | $478,663.00 |
| Totals: | $1,079,341.33 | $1,347,961300 |

Hayward & Associates PLLC's Objection to Comerica Bank's Motion for Allowance of Administrative Expense Claim [ECF No. 452] (the "**Objection**") ¶ 10. The Objection, however, ignores that Bailey Tool's November MOR includes both prepetition assets (over which Comerica holds a lien) and postpetition assets (to which Comerica's lien did not attach under 11 U.S.C. § 552(a), as discussed below). Because of this, a deeper analysis is required to determine whether there was a diminution in the value of Comerica's collateral.

Comparing Bailey Tool's Schedule A to its November MOR shows the following assets and corresponding values to which Comerica's lien attached under its prepetition security agreement:

| Category of Collateral | Schedule A [ECF No. 92] | November MOR [ECF No. 368] | Change in Value |
|---|---|---|---|
| Accounts Receivable | $448,926.33 | $862,295.00 | $413,368.67 |
| Cash on Hand | $11,172.00 | $7,003.00 | ($4,169.00) |
| Inventory | $619,243.12 | $478,663.00 | ($140,580.12) |

| Category of Collateral | Schedule A [ECF No. 92] | November MOR [ECF No. 368] | Change in Value |
|---|---|---|---|
| Office Furniture, Fixtures, and Equipment[9] | $18,500.00 | $18,500.00 | $0 |
| Machinery, Equipment, and Vehicles | $3,882,150.00 | $3,882,150.00 | $0 |
| Real Property[10] | $828,307.81 | $828,307.81 | $0 |
| All Other Assets[11] | $452,427.52 | $452,142.32 | ($285.20) |
| Totals: | $6,260,726.78 | $6,529,061.13 | $268,334.35 |

The Court will address these categories in turn.

### a. Accounts Receivable

Comerica alleges that it held a first lien on all of Bailey Tool's pre- and postpetition accounts receivable until the DIP Lender primed its lien, resulting in a diminution in the value of its collateral. Comerica's argument, however, fails to appreciate the effect that 11 U.S.C. § 552 had on the liens granted by its prepetition security agreement with the Debtors, which the Court will now explain.

The prepetition security agreement between Comerica and Bailey Tool covers all of the Debtors' accounts receivable and the proceeds generated by the collection of such receivables. Case No. 16-30503, Proof of Claim 17-1 Ex. G ¶ 1. Under 11 U.S.C. § 552(a), however, property acquired by a debtor after the petition date is not subject to a lien arising from a prepetition security agreement. 11 U.S.C. § 552(a).[12] Under § 552(b)(1), though, if a security agreement grants a lien

---

[9] Bailey Tool's February MOR lumps the Schedule A/B categories of (1) Office Furniture, Fixtures, and Equipment, (2) Machinery, Equipment, and Vehicles, and (3) Real Property into the category Property, Plant, and Equipment. *Compare* Schedule A/B [ECF No. 92] at 9 of 91, *with* November MOR [ECF No. 368] at 2 of 10.

[10] The real property and improvements located at 904 Mercury Avenue, Duncanville, Texas.

[11] "All Other Assets" is comprised of (1) $425,000 in research and development tax credits, (2) a $2,427.52 employee loan, and (3) $450,000 in funds that the Debtors allege are being improperly held by Republic. Schedule A/B [ECF No. 92] at 7-8 of 91. *See also* November MOR [ECF No. 123 at 3 of 10]. Because Comerica's lien would not attach to a tax credit, that amount is excluded from the above table.

[12] 11 U.S.C. § 552(a) states that:
> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

on a prepetition asset and the proceeds, products, offspring, or profits of such asset, then the security interest will continue postpetition in both the asset and the proceeds, products, offspring, or profits of the asset to the extent permitted by the security agreement and applicable law. *Id*. § 552(b)(1).[13] Thus, depending on whether Republic and the DIP Lender have been repaid, Comerica holds either a second or a third lien on the Debtors' prepetition accounts receivable and the proceeds generated by the postpetition collection of the prepetition accounts receivable. Comerica, however, could only have a lien on the Debtors' postpetition accounts receivable if granted by the Court. Although the Court did grant Comerica a replacement lien on the Debtors' postpetition accounts receivable (junior to the DIP Lender), that lien only arises *after* Comerica proves a decrease in the value of its collateral. *See* Final Cash Collateral Order ¶ 7; DIP Financing Order ¶ 3.5. Accordingly, Comerica never held a lien on Bailey Tool's postpetition accounts receivable that the DIP Lender could prime. The DIP Financing Order did, however, grant the DIP Lender a priming lien on the prepetition accounts receivable that serve as Comerica's collateral. DIP Financing Order ¶¶ 2.1 and H.

Because of this, the proper focus is not on the postpetition increase in Bailey Tool's accounts receivable, but on the prepetition accounts receivable collected during the bankruptcy case. Although neither party addressed this amount in their pleadings or at the Hearing, Bailey Tool's MORs show that it collected $177,282 between the Petition Date and November 30, 2016.[14]

---

[13] 11 U.S.C. § 552(b)(1) states, in relevant part, that:
… if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise

[14] *See* ECF Nos. 368 (February 2016) at 5, line 3 ($65,857 collected), 190 (March 2016) at 5, line 3 ($111,425 collected), 214 (April 2016) at 6, line 3 ($0 collected), 235 (May 2016) at 6, line 3 ($0 collected), 284 (June 2016) at

The record also reflects that Bailey Tool used these funds (Comerica's cash collateral) to operate its business and/or administer its bankruptcy estate. This use, coupled with the priming lien granted to the DIP Lender, resulted in a dollar-for-dollar diminution in the value of Comerica's collateral. Thus, the Court finds and concludes that Comerica has met its burden to prove that it holds a diminution claim in the amount of $177,282 under § 507(b), subject to later true-up as discussed below. *See* § IV, *infra*.

### b. Cash

Bailey Tool held $11,172 in cash as of the Petition Date, which had decreased to $7,003 by November 30, 2016. *Compare* Schedule A/B [ECF No. 92] at 9 of 91, *with* November MOR [ECF No. 368] at 2 of 11. The current amount of cash held by the Trustee, however, is unknown. Moreover, there is no evidence in the record regarding the source of such cash, including whether it was (1) Comerica's prepetition collateral or the proceeds thereof (to which its lien would attach), or (2) the proceeds of postpetition accounts receivable factored by the DIP Lender (to which only Comerica's replacement lien would attach). Accordingly, although a diminution in Bailey Tool's cash may have occurred, the Court finds and concludes that Comerica has failed to prove the amount.

### c. Inventory

A comparison of Bailey Tool's Schedules and November MOR shows a $140,580.12 decrease in inventory levels from the Petition Date through November 30, 2016. *Compare* Schedule A/B [ECF No. 92] at 9 of 91, *with* November MOR [ECF No. 368] at 2 of 11. The Trustee subsequently liquidated Bailey Tool's inventory, but the record is devoid of evidence regarding the liquidation value. Accordingly, although it appears that a diminution in the value of

---

6, line 3 ($0 collected), 296 (July 2016) at 6, line 3 ($0 collected), 310 (August 2016) at 6, line 3 ($0 collected), 331 (October 2016) at 6, line 3 ($0 collected), and 368 (November 2016) at 6, line 3 ($0 collected).

MEMORANDUM OPINION AND ORDER 13

Bailey Tool's inventory has occurred, the Court finds and concludes that Comerica has failed to prove the amount.

### d. Office Furniture, Fixtures, and Equipment; Machinery, Equipment, and Vehicles

Bailey Tool scheduled its office furniture, fixtures, and equipment with a value of $18,500 and its machinery, equipment, and vehicles with a value of $3,882,150, for a combined total of $3,900,650. Schedule A/B [ECF No. 92] at 9 of 91. These assets, however, were subject to senior liens held by: (1) ad valorem taxing authorities of $491,663.84,[15] and (2) various third parties of $84,391.21. Case No. 16-30503, Proof of Claim 1-3; Schedule D [ECF No. 92] at 10-14 of 91. Factoring in these amounts, the furniture, fixtures, machinery, equipment and vehicles that served as Comerica's collateral had a net value as of the Petition Date of $3,324,625 ($3,900,650 - $491,633.84 - $84,391.21).

These assets, along with those owned by the other Debtors, were liquidated during the bankruptcy cases, resulting in Comerica receiving $347,000 of net sale proceeds. Comerica Ex. 43 at 2. Of this amount, $320,000 is attributable to the sale of Bailey Tool's assets:

- On May 4, 2016, the Court entered an order [ECF No. 200] authorizing the Debtors to auction various surplus assets via a third party auctioneer. Pursuant to the sale report filed June 22, 2016, the auction generated $147,359.91 in sale proceeds. Of this amount, $129,114.60 was paid to Dallas County in partial payment of ad valorem taxes, and $18,245.85 was paid to a third party creditor on account of its secured claim on specific equipment. Comerica did not receive any of the sale proceeds. Agreed Order Granting Debtors' Motion to Disburse Auction Proceeds to Secured Creditors [ECF No. 297] (the "**Disbursement Order**") at 2. Moreover, the sale-related pleadings did not break down the assets sold or the purchase price on a by-Debtor basis, so the Court is unable to determine what portion of the sale proceeds arose from the sale of Bailey Tool's assets versus those owned by Hunt or Cafarelli.

- On August 12, 2016, the Court entered an order [ECF No. 283] authorizing Bailey Tool to sell four pieces of equipment to a third-party purchaser for a gross price of $5,700.

---

[15] Bailey Tool scheduled these same tax claims for $533,171.66. Schedule D [ECF No. 92] at 12 of 91. The difference between the claims as filed and scheduled is not material to this Court's ruling.

Dallas County received the sale proceeds in partial payment of ad valorem taxes. Disbursement Order at 2.

- On April 28, 2017, the Court entered an order authorizing the Trustee to sell the Debtors' remaining tangible personal property for $1,051,000. Order Authorizing Sale of Property of Estate Free and Clear of Liens and Encumbrances [ECF No. 423] (the "**April Sale Order**"). According to the underlying sale motion, the sale included $3,076,050 (value per Schedules) of Bailey Tool's computers, fixtures, equipment, machinery, and tooling. Motion to Sell Property of the Estate Free and Clear of Liens and Encumbrances [ECF No. 401] at 3. The sale proceeds allocated to Bailey Tool's assets was $839,955.14.[16] *Id.* Of this amount, Comerica received $320,000. Trustee's Sale Report [ECF No. 433] at 1. The sale proceeds were sufficient to satisfy the remaining ad valorem tax claims. April Sale Order at 2.

A comparison of the net scheduled value of Comerica's prepetition liens on Bailey Tool's furniture, fixtures, machinery, equipment, and vehicles ($3,324,625) versus the sale proceeds it received ($320,000) clearly shows that there was a diminution in the value of these assets. Comerica, though, must also prove that the diminution was due to either the imposition of the automatic stay under § 362, Bailey Tool's use, sale or lease of Comerica's collateral under § 363, or the granting of a senior lien under § 364(d). Although Bailey Tool presumably used these assets while operating in Chapter 11, the record is devoid of evidence regarding the cause of the diminution in the value. Thus, the Court finds and concludes that Comerica has failed to meet the requirements set forth in § 507(b) as to this category of assets.

### e. Real Property

As part of its loan documents, Comerica held a deed of trust covering the real property and improvements located at 904 and 906 Mercury Avenue, Duncanville, Texas (the "**Mercury Property**"), which was owned by Bailey Tool. Case No. 16-30503, Proof of Claim 17-1 Ex. F. Bailey Tool scheduled the Mercury Property with a value of $828,307.81, subject to $40,000 in ad valorem tax liens. Schedule A [ECF No. 92] at 6 of 91; Schedule D [ECF No. 92] at 11 of 91.

---

[16] In the April Sale Order, Comerica reserved its right to, among other things, challenge the Trustee's allocation of the purchase price as between the Debtors.

The Trustee sold the Mercury Property for $430,000 pursuant to a sale order entered January 23, 2017 [ECF No. 383] (the "**Mercury Sale Order**").  Per the Mercury Sale Order, the purchase price represented the fair market value of the Property.  *Id.* at 2.  Comerica received $300,000 in net proceeds from the sale.  Comerica Ex. 43 at 2.  Thus, there was clearly a diminution in the value of the Mercury Property during the pendency of Bailey Tool's bankruptcy case.

Under § 507(b), however, Comerica must prove that the diminution was due to either the imposition of the automatic stay under § 362, Bailey Tool's use, sale or lease of the Mercury Property under § 363, or the granting of a senior lien under § 364(d).  There is no evidence in the record that the diminution was a result one of these factors versus another reason, such as Bailey Tool overvaluing the Mercury Property in its Schedules or market factors that would have influenced the price regardless of the bankruptcy case.  Thus, the Court finds that Comerica has failed to prove that the diminution in the value of the Mercury Property meets the requirements of § 507(b).

### f. All Other Assets

As previously explained, the category of "All Other Assets" is comprised of the Debtors' claims against Republic for wrongfully withheld funds valued at $450,000 and an employee loan valued at $2,427.52.  Schedule A/B [ECF No. 92] at 7-8 of 91.  According to the Trustee's initial report filed with the Court on November 17, 2017 [ECF No. 519] (the "**Initial Report**"), the Trustee has not administered either of these assets and there is nothing in the record indicating that the assets have diminished in value.  Thus, the Court finds that Comerica has failed to prove these assets diminished in value during the pendency of Bailey Tool's bankruptcy case.

### C. The Parties' Arguments Regarding Ad Valorem Taxes

Comerica also argues that it is entitled to a superpriority claim equal to the ad valorem taxes that accrued during Bailey Tool's bankruptcy case.  The Court finds this argument

unpersuasive because the ad valorem tax liens prime Comerica's liens regardless of Bailey Tool's bankruptcy case. Because of this, Comerica is unable to prove that the accrual of ad valorem taxes resulted in a diminution in the value of its collateral due to the imposition of the automatic stay under § 362, Bailey Tool's' use, sale or lease of Comerica's collateral under § 363, or the granting of a senior lien under § 364(d). 11 U.S.C. § 507(b); *see In re Constr. Supervision Servs., Inc.*, 2015 WL 4873062, at *7 (Bankr. E.D.N.C. Aug. 13, 2015), *aff'd sub nom.* 2016 WL 2764328 (E.D.N.C. May 9, 2016) (holding creditor not entitled to superpriority claim when diminution would have occurred regardless of the bankruptcy case); *In re Mendez*, 259 B.R. 754, 758 (Bankr. M.D. Fla. 2001) ("losses that would have occurred despite the interference of the bankruptcy case are not entitled to protection under § 507(b)"); *see also* Final Cash Collateral Order ¶ 7 (granting Comerica adequate protection, but clarifying that "[n]othing in this order or any prior order shall be construed to grant liens that prime ad valorem property tax liens.").

Along a similar vein, Hayward argues that a decrease in 2016 and 2017 personal property ad valorem taxes that resulted from a postpetition settlement of the Debtors' tax protest increased the value of Comerica's collateral. *See* Order Approving Compromise [ECF No. 417] (the "**Tax Settlement Order**") (reducing the 2016 and 2017 appraisal value of Bailey Tool's business personal property). According to Hayward, the proper calculation of alleged diminution compares the value of Comerica's liens, net of all senior liens. And, because the senior ad valorem tax claims were significantly less postpetition than they were as of the Petition Date, the value of Comerica's liens increased. Although the Court agrees with Hayward's general premise, for the reason explained below, the Court finds that the reduction in personal property ad valorem taxes at issue does not compensate for the $177,282 diminution in the value of Comerica's lien on Bailey Tool's accounts receivable.

The Dallas Central Appraisal District assigned the business personal property ad valorem taxes owed by Bailey Tool Account Nos. x42100 and x23200.  Plaintiff's Original Petition and Request for Disclosure [Adv. Proc. No. 16-3129, ECF No. 1-2] ¶ 9.  The appraisal values for the accounts were $1,629,790 and $4,421,680, respectively.  *Id.*  The Tax Settlement Order reduced these amounts to $680,010 and $780,500, respectively, for tax years 2016 and 2017.  This resulted in Bailey Tool paying less in personal property ad valorem taxes than it otherwise would have.  These tax savings, however, relate solely to business personal property, such as inventory, furniture, fixtures, machinery, equipment, and vehicles (collectively, the "**Personal Property**").  Case No. 16-30503, Proof of Claim No. 1-3; *see* TEX. PROP. TAX CODE §§ 11.01(a) ("All real and tangible personal property that this state has jurisdiction to tax is taxable unless exempt by law), 11.02 (stating that, with limited exceptions not applicable here, intangible personal property is not taxable), and 104(6) (defining intangible personal property to include accounts receivable).  The Court, however, previously held that Comerica failed to prove that the diminution in Bailey Tool's Personal Property met the requirements of 11 U.S.C. § 507(b).  *See* §§ III.B.2.c-d, *supra*.  Because Comerica failed to prove a qualifying diminution in value of the Personal Property, any argument that tax savings on that same property offset an alleged diminution in value is moot.

### D. Whether the Collateral Shortfall was Offset by Comerica's Replacement Liens

As reflected in the Initial Report, the Trustee has fully administered all of Bailey Tool's assets, with the exceptions of (1) the $2,427.52 employee loan, (2) the ongoing collection of pre-and postpetition accounts receivable,[17] and (3) the Debtors' claim against Republic for wrongfully withheld funds, which the Schedules value at $450,000.  Of these, the only asset not subject to Comerica's

---

[17] A comparison of Bailey Tool's Schedules and MORs show that it values the uncollected prepetition accounts receivable at $271,644.

prepetition lien is the proceeds of postpetition accounts receivable, which are also subject to the DIP Lender's priming lien and/or Republic's senior lien, to the extent such entities have not be paid in full. Accordingly, based upon the record before it today, the Court finds that the $177,282 diminution in Comerica's collateral was not offset by the replacement liens Comerica was granted under the Cash Collateral Orders and the DIP Financing Order (the "**Interim Diminution Claim**"). The amount of the Interim Diminution Claim will likely change, however, as the Trustee continues to administer Bailey Tool's remaining assets.

## IV.   CONCLUSION

For the reasons explained above, the Court finds and concludes that there has been a failure in Comerica's adequate protection and that some portion of the $177,282 Interim Diminution Claim is entitled to superpriority status. The Court, however, is unable to determine the amount at this time because of the Trustee's ongoing collection of both pre- and postpetition accounts receivable and the pending Republic Adversary Proceeding.[18]   Thus, the Court will allow Comerica, on an interim basis, a superpriority claim under 11 U.S.C. § 507(b) of $177,282, which

---

[18] With respect to the Republic Adversary Proceeding, Hayward argues that Comerica has agreed to limit its lien on litigation proceeds to the first $180,000 received, as reflected by the Order Approving Compromise and Settlement Under Rule 9019 [ECF No. 444] (the "**Settlement Order**"). The Settlement Order was entered in resolution of Comerica's objection to the Trustee's request to employ special litigation counsel to prosecute the Republic Adversary Proceeding at a 40% contingency fee, plus expenses. Comerica objected because the 40% contingency was a flat percentage that did not account for the possibility that the litigation may settle soon after special litigation counsel was employed. In resolution of this objection, the Trustee sought Court approval of a settlement with Comerica, which is reflected in the Settlement Order. The relevant portion of the Settlement Order reads as follows:

> The Trustee and Special Litigation Counsel agree, in compromise and settlement, that the first One Hundred and Eighty Thousand Dollars ($180,000.00) or ten percent (10%) of the gross recovery (whichever is greater) collected from the litigation to be pursued by Special Litigation Counsel on behalf of the Trustee against RBC shall be paid to Comerica without any contingent fee or costs of the litigation being subtracted therefrom.

*Id.* ¶ E. There is no language in the Settlement Order or the underlying motion indicating that Comerica agreed to waive its lien on any other litigation proceeds that fall under the terms of its prepetition security agreement. Instead, the settlement addressed Comerica's concern that an early settlement of the Republic Adversary Proceeding would result in special litigtion counsel receiving a disproportionate share of the litigation proceeds.

reflects the proceeds from Bailey Tool's postpetition collection and use of the prepetition accounts receivable that serve as Comerica's collateral.

The Interim Diminution Claim, however, will be subject to a true-up between the Trustee and Comerica as additional accounts receivable are collected and the Republic Adversary Proceeding concluded. Upon final true-up, Comerica shall file a Notice with this Court that contains the final superpriority diminution claim agreed to by the Trustee and Comerica (the "**Agreed Diminution Claim**").[19] Hayward shall have 21 days to file an objection to the Agreed Diminution Claim. If Hayward fails to timely object, Comerica shall upload an order allowing the Agreed Diminution Claim on a final basis. If Hayward timely objects and the parties are unable to reach a resolution, Hayward, Comerica, and the Trustee shall file a joint status report with the Court setting forth their respective positions and requesting a status conference. At the status conference, the Court will establish a scheduling order with respect to a further evidentiary hearing.

SO ORDERED

# # # END OF MEMORANDUM OPIINION AND ORDER # # #

---

[19] If the Trustee and Comerica are unable to reach an agreement, Comerica and the Trustee shall file a joint status report with the Court setting forth their respective positions and requesting a status conference. At the status conference, the Court will establish a scheduling order with respect to a further evidentiary hearing.